# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: TK HOLDINGS, INC., *et al.*, | Chapter 11 |
| | Case No. 17-11375 (BLS) |
| Debtors. | (Jointly Administered) |
| | |
| JAMES F. DEBOUNO, JR., | |
| Appellant, | |
| v. | |
| | Civ. No. 20-1480-RGA |
| ERIC D. GREEN, in his capacity as Trustee of the PSAN PI/WD Trust d/b/a the Takata Airbag Tort Compensation Trust Fund, and TK HOLDINGS, INC., *et al.*, | |
| Appellees. | |

## **MEMORANDUM OPINION**

James F. DeBouno, Jr., Ph.D., Voorhees, New Jersey, *pro se* Appellant.

Stanley B. Tarr, Esq., Blank Rome LLP, Wilmington, Delaware; David J. Molton, Esq., D. Cameron Moxley, Esq., Gerard T. Cicero, Esq., Uchechi A. Egeonuigwe, Esq., Brown Rudnick LLP, New York, New York, attorneys for Eric D. Green, in his capacity as Trustee of the Takata Airbag Tort Compensation Trust.

July 14, 2021

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

This appeal, filed by appellant James F. DeBouno, Jr., arises in the chapter 11 bankruptcy cases of TK Holdings, Inc. and its affiliated debtors (collectively, "TKH" or "Debtors") and in connection with the Takata Airbag Tort Compensation Trust Fund ("TATCTF") established under TKH's confirmed Chapter 11 plan. The Bankruptcy Court granted the motion of Eric D. Green, the Trustee of TATCTF, seeking to expunge and disallow Appellant's claim for recovery (and those of other claimants) against the TATCTF (D.I. 1-1 ("Opinion"); D.I. 1-2) ("Order"). For the reasons set forth herein, the Court will affirm the Order.

## I. BACKGROUND

TKH was a leading global developer and manufacturer of automotive safety and non-safety systems including airbags and seat belts. TKH manufactured airbag inflators containing phase-stabilized ammonium nitrate ("PSAN"), which had the potential to rupture upon airbag deployment, causing death and serious injury to automobile occupants. In response to multiple reports of injuries caused by PSAN inflators in vehicles, the National Highway Traffic Safety Administration ("NHTSA") initiated the largest product recall in U.S. history.

Each of the TKH affiliated debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Bankruptcy Court confirmed a Plan of Reorganization of TK Holdings Inc. and its Affiliated Debtors ("Plan"). (*See* Bankr. D.I.. 2116, 2120).[1] The Plan became effective on April 10, 2018 (Bankr. D.I. 2646) (the "Effective Date").

The Plan divides personal injury and wrongful death claims ("PI/WD") claims related to Takata Products into two classes: (I) Class 5 PSAN PI/WD Claims for claims related to an injury

---

[1] The docket of the Chapter 11 cases, captioned *In re TK Holdings, Inc.*, No. 17-11375 (BLS), is cited herein as "Bankr. D.I. ___."

2

or death allegedly caused by a PSAN inflator, and (ii) Class 7 Other PI/WD Claims for claims, other than PSAN PI/WD Claims, arising out of or relating to an injury or death allegedly caused by a TKH Product. Any unsecured claim other than a Class 5 PSAN PI/WD Claim or a Class 7 Other PI/WD Claim is classified as a Class 6 Other General Unsecured Claim. Upon the Effective Date, the TATCTF was established, in relevant part, for the purpose of administering, resolving, liquidating, and satisfying the Class 5 PSAN PI/WD Claims, the Class 7 Other PI/WD Claims, as well as other claims described in Section 5.10 of the Plan.

The Trustee of the TATCTF and TATCTF professionals review and reconcile personal injury and wrongful death claims with the Debtors' books and records to determine the validity of those claims. At issue in this appeal are the Trustee's third, eighth, and ninth omnibus claim objections (Bankr. D.I. 3528, 3671, and 3943) ("Claim Objections"). The Claim Objections seek to disallow 283 claims filed by parties alleging that they were injured as a result of an airbag's failure to deploy during an automobile accident ("No Liability Claims" or "Claimants"). Claimants filed responses objecting to the disallowance or expungement of their claims. Appellant, whose claim for $38,500 (*see* D.I. 1-2 at 5 of 6; D.I. 7 at 11)[2] was included among the No Liability Claims, filed a response (Bankr. D.I. 3549) ("DeBouno Response") in opposition to the Claim Objections along with several other claimants (together, the "Responses"). Each of the Claimants asserted a claim of recovery against the TATCTF on the theory that injuries suffered by an airbag's failure to deploy – just as those from a too-violent deployment – are the fault of products manufactured by the Debtors. The Trustee did not dispute, with respect to any of the Claims at issue, that an airbag failed to deploy, or that the failed deployment caused

---

[2] Appellant states he is seeking relief for the claim of Edwina Gonzales of San Diego. (D.I. 7 at 11; *see* D.I. 1-2 at 6 of 6). I doubt that Appellant, who is not a lawyer, can represent any individual other than himself.

3

injuries to the applicable Claimant. Rather, the Trustee argued that, even if an airbag failed to deploy during a vehicle accident that resulted in injury to a Claimant, such an event could not be attributed to a component manufactured by the Debtors, and, therefore, the Debtors' estates had no liability for such claims. The Claim Objections sought to disallow the No Liability Claims in their entirety.

The Trustee based his argument on expert and fact witness testimony. First, the TATCTF retained the services of Harold R. Blomquist, Ph.D. ("Dr. Blomquist"), a chemist with 37 years of industrial research and development experience, to consult on scientific issues related to the TATCTF's administration of Class 7 Claims (Other PI/WD Claims). As set forth in the Declaration (Bankr. D.I. 3530) ("Blomquist Declaration") filed in support of the Claim Objections, Dr. Blomquist concluded that the deployment of an airbag is determined by sensors located on various parts of a vehicle, along with an electronic control unit ("ECU") that processes data obtained from the sensors. Inflators themselves – the sort manufactured by the Debtors – are not responsible for the mechanism in a vehicle that determines if an airbag will deploy. The Blomquist Declaration provides as follows:

> The airbag system is comprised of a computer processor called the electronic control unit ("ECU") and the airbag module, which consists of a plastic cover, a folded airbag cushion, the housing, and the inflator. The process of deploying an airbag upon collision begins with crash sensors—small electronic components that detect changes in the velocity and direction of the automobile. Upon impact, these sensors measure how quickly a vehicle slows down in a frontal crash or accelerates to the side in a side-impact crash. The data collected by these sensors is sent to the ECU, which then assesses the severity and direction of the impact. The ECU uses software algorithms to determine whether or not airbag deployment is necessary, depending on variables such as the speed of the crash, the angle of the crash, and the position of the vehicle occupant.
>
> If the ECU determines that a deployment should occur, it then within milliseconds sends a signal (electrical current) to the inflator. Upon receiving the signal, the inflator converts the signal to a chemical combustion reaction, which generates a harmless gas that releases into the airbag, causing the airbag to fill with gas. In other words, the

inflator is a chemical component that merely and irreversibly responds to the signal it is given from the ECU and has no role in the failure of an airbag to deploy.

***The manufacturer of the inflator or airbag module cannot be in any way responsible for failure to deploy events, since their components are not involved in determining whether a deployment should occur.***

(Blomquist Decl. at ¶¶ 7-9 (emphasis added)). Dr. Blomquist's opinion was further substantiated by laboratory testing conducted by the Debtors and third-party investigators, as outlined in his supplemental declaration (Bankr. D.I. 3593) (the "Supplemental Blomquist Declaration," and, together with the Blomquist Declaration, the "Blomquist Declarations"):

> Takata has tested over 360,000 inflators and distributed parts to supporting laboratories. In these tests, whenever the inflators received a signal (electrical current), the inflators functioned (converting the signal to a chemical combustion reaction and causing the airbag to fill with gas). Even defective inflators responded to the signal, albeit too vigorously. These results provide further support for my determination that the inflator has no role in the failure of an airbag to deploy.

(Supplemental Blomquist Decl. at ¶ 3).

Second, Michael Rains, the Debtors' former CEO and current plan administrator of TK Global, with 25 years of experience with the company, averred that "none of the Debtors manufactured, sold, or were in any way involved with the design of [ECUs] or crash sensor components in the vehicles at issue in the No Liability Claims." (Bankr. D.I. 3531 ("Rains Declaration") at ¶ 3).

The Bankruptcy Court held an evidentiary hearing to consider the Claim Objections and Responses on November 25, 2019, when the Trustee presented the expert testimony of Dr. Blomquist, and on February 11, 2020, when the hearing continued and Appellant DeBouno testified.

At issue was whether the Trustee had provided sufficient evidence to rebut the presumptive validity of the No Liability Claims by establishing by a preponderance of the

evidence that if an airbag failed to entirely deploy during a vehicle accident, such malfunction was caused by an airbag component not manufactured by the Debtors. On October 8, 2020, the Bankruptcy Court issued an opinion holding that the Trustee met his burden of proof to show "that the Takata inflators have no role in the failure of an airbag to deploy." The Bankruptcy Court primarily relied on the Blomquist Declarations and Dr. Blomquist's testimony at the evidentiary hearing. (Opinion at 15).

Appellant filed a timely appeal. (D.I. 1). The merits have been fully briefed. (D.I. 7, D.I. 14, D.I. 21).

The Court did not hold oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction as the appeal is from a final order. *See* 28 U.S.C. § 158(a)(1). The Court reviews "the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercises of discretion for abuse thereof." *Professional Ins. Mgmt. v. Ohio Casualty Group of Ins. Cos.*, 285 F.3d 268, 282-83 (3d Cir. 2002).

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony, contains three primary requirements: "(1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) and the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). The Court applies "an abuse-of-discretion standard when reviewing a District Court's decision to admit or exclude expert testimony." *Id.* at 243. "An abuse of discretion exists where the [bankruptcy] court's decision rests upon a

6

clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Decade, S.A.C., LLC*, 2020 WL 564903, at *4 (D. Del. Feb. 5, 2020) (quoting *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 470 (3d Cir. 1998)). A finding of fact is clearly erroneous "only if it is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." *Advance Cap. Partners, LLC v. Rossmann*, 495 F. App'x 235, 237 (3d Cir. 2012).

## III. PARTIES' CONTENTIONS

Appellant raises several issues on appeal. Appellant's main argument is that the Bankruptcy Court's review was biased. (D.I. 7 at 5, 8-10). Appellant argues that the Bankruptcy Court "did not fairly review or scientifically consider the evidence submitted by the Claimants" and failed to consider that "some evidence submitted by the Debtors was contradictory or did not fully conform to the Scientific Method." (*Id.* 5). Appellant further argues that that Debtors failed to produce relevant documents for examination and failed to give proper notice of the bar date set in the Chapter 11 cases. (*Id.* at 6). Appellant further argues that he was prejudiced by the Debtors' numerous postponements and that he did not receive reimbursements of his expenses. (*Id.* at 6-7).

The Trustee argues that he met his burden of proof in rebutting the validity of the No Liability Claims. According to the Trustee, he demonstrated that TATCTF could not be held liable on Appellant's claims because the airbag components manufactured by the Debtors (defective or otherwise) have no role in determining whether an airbag actually deploys during a vehicle collision; thus, no liability could be ascribed to the Debtors and/or TATCTF as a matter of state law, and the No Liability Claims were appropriately disallowed and expunged by the Bankruptcy Court's Order. According to the Trustee, Appellant has failed to show that the

7

Bankruptcy Court abused its discretion in admitting Blomquist as an expert witness, and Appellant has pointed to no clear error in the Bankruptcy Court determination that the Trustee met his burden of proof. As to Appellant's remaining arguments, the Trustee contends that they lack merit and/or are irrelevant to the expunged claims.

## IV. ANALYSIS

The recall focused on airbags that inflated too violently due to defective PSAN inflators made by TKH, injuring and killing drivers and passengers with "shrapnel" from the airbag deployment. In contrast, each of the No Liability Claims expunged under the Order asserted a claim for injuries suffered when an airbag completely failed to deploy when needed. Those Claimants asserted a claim of recovery against the Debtors on the theory that products manufactured by the Debtors, including PSAN inflators, caused the vehicle's airbag to fail to deploy during an accident resulting in injury. The Trustee objected to those claims arguing that any airbag's failure to deploy was attributable to a component not manufactured by TKH.

The Claim Objections sought relief under the Bankruptcy Code, which requires disallowance of a claim to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). "This provision is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450 (2007). Once a party in interest objects to a filed claim, the matter becomes a contested matter with a shifting burden of proof that ultimately resides with the claimant, as articulated by the Third Circuit:

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times ... a claim that alleges facts sufficient

8

to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. It is often said that the objector must produce evidence equal in force to the prima facie case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.

*In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-74 (3d Cir. 1992) (internal citations omitted).

Under this burden-shifting framework, the Bankruptcy Court considered whether the TATCTF "provided sufficient evidence to adequately rebut the validity" of the No Liability Claims. (Opinion at 5).

### A. The Bankruptcy Court Did Not Abuse Its Discretion in Qualifying Dr. Blomquist as an Expert Witness and Accepting His Testimony

The Trustee offered the testimony of Dr. Blomquist as an expert witness in support of the Claim Objections. Claimant James Artel, who is not a party to this appeal, objected to Dr. Blomquist's qualification as an expert on the basis that Dr. Blomquist's testimony should be limited to causes of airbag ruptures, not other potential causes or the lack thereof for an airbag's failure to inflate. (Bankr. D.I. 4051, 11/25/2019 Hr'g Tr. at 49:14-23). The Bankruptcy Court overruled this objection and qualified Dr. Blomquist as an expert witness in airbag technology. (*Id.* at 51:2-7; Opinion at 6).

As set forth in the Opinion, the Bankruptcy Court took into account Dr. Blomquist's doctorate in chemistry, his 37 years of industrial research and development experience as both a staff scientist and a manager/director of R&D activities, his work experience in automotive engineering developing energetic materials and propulsion systems, and his familiarity with the automotive development process for airbag systems. (*See* Opinion at 5-6). Dr. Blomquist's prior consulting engagement with NHTSA was also pertinent to the non-deployment issue at the

9

heart of the Trustee's Claim Objections, as noted by the Bankruptcy Court:

> Dr. Blomquist was previously retained by the National Highway Traffic Safety Administration ("NHTSA") to consult on scientific issues related to NHTSA's investigation into rupturing air bag inflators manufactured by [TKH], and to assist NHTSA with the identification and verification of the root-cause(s) for the ruptures. In this role, he gained specialized knowledge regarding and experiences with TKH inflators. He conducted this work, which has been completed, as an independent expert on behalf of NHTSA, and not on behalf of TKH, any original equipment manufacturer, or any claimant involved in these Chapter 11 Cases.

(Opinion at 6 (citing Blomquist Decl. at ¶¶ 2-4)). Appellant offers no basis for the Court to find that the Bankruptcy Court abused its discretion in qualifying Dr. Blomquist as an expert.

### B. The Bankruptcy Court Did Not Err in Concluding that the Trustee Carried His Burden

Consistent with his Declarations, Dr. Blomquist provided detailed testimony at the November 25, 2019 evidentiary hearing concerning airbag system operations and explained how a PSAN inflator – defective or not – plays no role in whether an airbag deploys properly. (*See* 11/25/2019 Hr'g Tr. at 51:12-54:11; 65:24-66:17). Central to the Claim Objections, Dr. Blomquist confirmed his expert opinion that "if an airbag did not deploy, that means that that inflator did not receive a signal" from the ECU or sensor component not manufactured by TKH. (*See id.* at 65:24-66:2). Dr. Blomquist further testified that the Debtors do not manufacture ECUs or sensor components. (*Id.* at 62:5-12; *see also* Rains Declaration at ¶ 3). While Dr. Blomquist admitted that he had not inspected any individual claimant's automobile, that did not change his opinion as set forth in his Declaration: "With respect to the airbag, that's the simple end of the system. It gets the current signal to fire or it doesn't." (*Id.* at 66:15-17). Taking into account the Blomquist Declarations, Dr. Blomquist's testimony at the evidentiary hearing, and the record, the Bankruptcy Court considered whether the Claimants could ultimately prove the validity of the No Liability Claims.

10

In response to Dr. Blomquist's testimony, the Claimants offered the testimony of Appellant, who possesses a doctorate in environmental science and taught chemistry at several colleges and universities. The Bankruptcy Court noted that, while Appellant's background "does not lend itself directly to providing expert testimony on the issues at the heart of the Claim Objections, the Court nevertheless afforded the parties and Dr. DeBouno broad latitude to offer testimony" at the evidentiary hearing. (*See* Bankr. D.I. 4087, 2/11/2020 Hr'g Tr. at 23:7-33:6; Opinion at 11).

Appellant challenged Dr. Blomquist's findings on three substantive grounds: (i) that environmental conditions could cause degradation of the chemicals in a PSAN inflator (like those produced by the Debtors), which could cause airbags not to deploy (*id.* at 35:1-38:8); (ii) that leakage in an airbag could cause non-deployment (*id.* at 40:22-21:11); and (iii) the validity of the tests conducted by the Debtors and Debtors' prior admission to having produced defective PSAN inflators (11/25/19 Hr'g Tr. at 110:18-112:18; *see also* D.I. 7 at 9, ¶ 5).

With respect to the Appellant's assertion that degradation of the chemical mixture in a PSAN inflator over time could cause non-deployment, Dr. Blomquist testified that laboratory testing at four separate laboratories revealed no evidence of degradation. (*See* 11/25/2019 at 92:9-93:2; *see also* Blomquist Supplemental Declaration at ¶ 4 ("In addition, various investigators have dissected over 11,000 of these inflators to obtain and perform analyses on the propellants in the inflators. The investigators reported that the chemical integrity (measurable properties) of all ingredients in the mixtures (used to produce gas) sampled from field inflators are essentially indistinguishable from new materials. These findings demonstrate that the propellants in the inflators are not subject to chemical degradation over time that would result in the failure of the inflator to generate and release gas into the airbag."). Moreover, even if

11

degradation were to occur, Dr. Blomquist testified, such degradation would only impact the rate of inflation of the airbag and not whether the airbag would fail to inflate at all. (*See id.* at 157:18-21; Opinion at 14). For these reasons, the Bankruptcy Court found that Appellant only offered "hypothetical reasons why a PSAN inflator might break down, but the evidence before the Court does not support this." (Opinion at 15).

With respect to Appellant's assertion that leakage in an airbag could cause non-deployment, the Bankruptcy Court noted, "Dr. Blomquist's testimony agreed that if an inflator had leakage, the leaks could affect the operation or potency of the PSAN chemicals, which could affect the deployment of the unit." (*Id.*) Dr. Blomquist disagreed, however, that leakage could cause nondeployment of an airbag because, in his view, such a defect in the housing of the chemicals would be found through rigorous testing and rejected at the factory. Whereas each side "speculated and engaged in hypotheticals" on this point, the Bankruptcy Court found the Appellant's leakage speculation unsubstantiated and held that that the related testimony had provided "no basis to assist the Court in making its determination." (*Id.*)

Finally, Appellant challenged Dr. Blomquist's testimony that even a defective airbag would always respond when it received a signal from the ECU, a fact which Dr. Blomquist testified had been substantiated by 360,000 tests conducted by TKH. (Opinion at 14). Appellant questioned the reliability and validity of the 360,000 tests conducted by the Debtors, based on the Debtors' admitted past falsification and alteration of records and fraud. On cross-examination, Dr. Blomquist clarified that the falsified records submitted by the Debtors in connection with a Department of Justice criminal probe were unrelated to the 360,000 inflator tests that corroborate Dr. Blomquist's opinion that PSAN inflators have no role in the failure of an airbag to deploy. "[T]he 360,000 are laboratory tests done long after the fraud. Those were

12

done in response to interactions with NHTSA and under orders of NHTSA ... The recordkeeping for that is under NHTSA's control." (*See* 11/25/2019 Hr'g Tr. at 89:18-90:5).

Ultimately, the Bankruptcy Court held that the Trustee's assertion that TKH inflators did not cause the non-deployment of airbags was not adequately rebutted by the Claimants' evidence and Appellant's testimony. (Opinion at 16).

### C. Appellant Has Asserted No Clear Error by the Bankruptcy Court

Appellant raises two main categories of arguments in its appeal: (i) the Debtors' or Trustee's "obstruction" by virtue of an alleged failure to produce certain data and information, and (ii) the Bankruptcy Court's "biased review" by virtue of its failure to consider certain evidence submitted by Claimants and failure to recognize the contradictory nature of certain portions of Dr. Blomquist's testimony. (D.I. 7 at 8). These arguments are not supported by the record.

With respect to obstruction, Appellant argues generally that the Debtors failed to produce relevant documents or electronically stored information for the Claimants' examination. Specifically, Appellant points to Dr. Blomquist's failure to attach or provide data set links to his Declarations during the discovery process. (D.I. 7 at 5, 8). Appellant further points to the Trustee's failure to produce underlying data or documents relied on by Dr. Blomquist in opining on the reliability of the 360,000 inflator tests conducted by the Debtors. (*Id.* at 6, ¶ 1). Based on these failures, Appellant argues that the scientific testing data could not be independently validated and was presented to the Bankruptcy Court without specific parameters. (*Id.* at 5). However, Dr. Blomquist was cross-examined by Appellant at the evidentiary hearing, and Appellant admits that the Debtors having supplied "actual data" underlying the Blomquist

13

Declarations. Moreover, Appellant fails to point to any prior relevant document requests to the TATCTF or to the Debtors with which Debtors did not comply.

With respect to the Bankruptcy Court's allegedly biased review, Appellant argues that Dr. Blomquist failed to take into account submitted evidence supporting the claims, including photographs, a traffic collision report, a manufacturer's manual, the Department of Justice's criminal probe of the Debtors, congressional hearing records, and other evidence specific to Appellant's claim, and therefore "his review was incomplete." (*Id.* at 8-10, ¶¶ 2-7; D.I. 21 at 7). Appellant argues that the Bankruptcy Court Opinion did not mention this evidence at all which "led to erroneous assumptions." (*Id.*) Appellant points to the Responses he filed in support of his Claim and the responses filed in support of claims by Edwina Gonzales.

The Response in support of Appellant's claim indicates that Appellant's vehicle "was involved in a crash when being struck by another vehicle" on May 24, 2017, during which "[n]either of the airbags inflated or deployed on collision." (Bankr. D.I. 3549). The Response states that tests of the vehicle's onboard computers from several months earlier – which "allow analysis of any malfunctions including sensors and switches" – were conducted by "trained licensed mechanics in the state of NJ." (*Id.*) Appellant asserts that the "Vehicle Report Card" issued by his dealership on November 9, 2016, six months before the accident, "***does not mention*** any sensors or switches related to airbags." (*Id.* (emphasis added)). This evidence, while certainly probative, does not alone support a finding that the sensor remained functional months later at the time of the accident (and therefore could not have been responsible for the airbag's failure to deploy), as Appellant appears to contend, nor is it sufficient to rebut Dr. Blomquist's conclusions.

14

Appellant argues that the Responses filed in support of Claim Nos. P-0055887 and P-0053775 by Edwina Gonzales, "contains 11 pages of contradictory evidence to Dr. Blomquist's Declarations," including "Statistical Evidence, Manufacturer Manual, Traffic Collision Report, and Vehicle Photographs." (D.I. 7 at 9). According to Appellant, that evidence "demonstrated that the passenger side inflator did over-pressurize[] during an accident" and "indicates the single front sensor to be functioning," and yet, Appellant argues, "Dr. Blomquist did not make any specific response." (*Id.*) It is unclear what evidence in the record Appellant is citing. The first Response filed by Ms. Gonzales (Bankr. D.I. 3599) contains her sworn statement that the sensors and ECU in her vehicle "deployed properly for the passenger side, but the airbag inflator or airbag control module failed to deploy and inflate the driver's side airbag" and her further assertion that this "indicat[es] the inflator or module was defective and solely responsible for the airbag nondeployment." (*Id.* at 3:18-23). The first Response contains no attachments, however. The second Response (Bankr. D.I. 3976), which indicates that it was prepared by Appellant on behalf of Ms. Gonzales, attaches a recall notice, a driver safety manual concerning airbags, and a traffic collision report, with a related sketch and post-collision photograph. The Court agrees with the Trustee that the attachments demonstrate no clear error in the Bankruptcy Court's findings or basis for reversal of the Order. The Claimants did not provide expert testimony to support their interpretation of the materials submitted with the Responses. And, as Dr. Blomquist testified, no examination of any specific vehicle would alter his analysis, given the nature of the analysis and the supporting evidence. (11/25/2019 Hr'g Tr. at 66:11-17).

Appellant further argues that, in his November 25, 2019 testimony, "Dr. Blomquist contradicted his Declarations to agree the ECU played no role on inflation and that the sensors were functioning." (D.I. 21 at 11). Appellant fails to quote or cite any specific portion of Dr.

15

Blomquist's testimony. Nevertheless, I have considered the transcript (*see* 11/25/2019 Hr'g Tr. at 28, 37, 116, 126) and disagree with Appellant's characterization of this testimony as contradicting the conclusions set forth in Dr. Blomquist's Declarations. In sum, the Court finds no error in the Bankruptcy Court's conclusion that, despite the evidence offered by Claimants, the Trustee had provided sufficient evidence to adequately rebut the validity of the No Liability Claims. (*See* Opinion at 15).

Finally, Appellant argues that certain claimants were not afforded due process in connection with the filing of the Debtors' Chapter 11 cases and the bar date order that effectively disallows later-filed claims. The No Liability Claims expunged and disallowed by the Order, however, which include Appellant's claim, do not involve late filed claims. Thus, the bar date order and any insufficient service argument are irrelevant to the appeal. (*See* D.I. 7 at 6, ¶ 2).[3]

## V. CONCLUSION

The Bankruptcy Court committed no abuse of discretion in qualifying Dr. Blomquist as an expert in airbag technology and accepting his testimony. Appellant offers no basis for this Court to conclude that the Bankruptcy Court committed any clear error in finding that PSAN inflators manufactured by the Debtors did not play any role in the failure of an airbag to deploy in connection with the No Liability Claims.

For the reasons set forth herein, the Order is affirmed.

A separate order will be entered.

---

[3] I do not consider Appellant's additional argument that he should have received compensation or cost reimbursement as a professional. (D.I. 7 at 7). Appellant has offered no basis for the Court to conclude that he was retained as professional in the Chapter 11 cases, that he has applied to the Bankruptcy Court for allowance of administrative expenses on the basis of having made a substantial contribution to the Chapter 11 cases under § 503(b)(3)(D), or that he has established any other basis for compensation or expense reimbursement under the Bankruptcy Code.